IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**BRANDON SUMRALL**                                                                      **PLAINTIFF**

**v.**                                                     **CIVIL ACTION NO. 2:17-CV-48-KS-MTP**

**ENSCO OFFSHORE COMPANY**                                    **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the parties' cross-motions for summary judgment and Defendant Ensco Offshore Company's ("Ensco") Motion to Strike Plaintiff's Affidavit. For the reasons below, the Court finds that Defendant's Motion to Strike is not well taken and should be **denied**; Defendant's Motion for Summary Judgment is **granted in part and denied in part**; and Plaintiff Brandon Sumrall's Motion for Summary Judgment is not well taken and should be **denied**.

**I. BACKGROUND**

Plaintiff Brandon Sumrall was hired by Pride International, Inc. in 2005 as a roustabout on one of its rigs, the Deepwater Thunderhorse. Sumrall Aff. ¶ 2, ECF No. 34-1. Sumrall is a member of the Mississippi National Guard. *Id.* ¶ 3. In 2007, he took military leave and returned in 2008. *Id.* Sumrall took military leave again in June 2011 when he was deployed to Kuwait. *Id.* Shortly after he left, Ensco, the Defendant, acquired Pride. *Id.* ¶ 4.

On March 1, 2012, Sumrall emailed Tommy Ellis[1] requesting a new point of contact in Ensco's Houston office, as he had trouble reaching anyone there via phone or email. March 2012 Email Chain Between Sumrall, Ellis, and Phillips 2, ECF No. 32-5. Ellis forwarded the email to

---

[1] It is unclear from the record what position Ellis held within Ensco. In his declaration, Sumrall submits that Ellis was a rig clerk, Sumrall Aff. ¶ 6, while Ensco calls him a "safety representative on the Thurderhorse rig." Def. Ensco Offshore Co.'s Mem. Brief Supp. Mot. Summ J. 5, ECF No. 33.

1

James Phillips, the rig training supervisor, who asked Sumrall what information he needed and told him to send his response to a shared email account. *Id.* at 1. Sumrall responded that he was having pay issues[2] and that he wondered if Ensco was hiring because some of his friends were looking for jobs upon their return. *Id.* Phillips responded that the rig clerk was handling pay issues and stated that Ensco was hiring. Email from James Phillips to Brandon Sumrall (Apr. 1, 2012), ECF No. 32-6. Phillips provided Sumrall with the rig clerk email. *Id.*

On May 2, 2012, Sumrall and Derek Sykes, a rig clerk, spoke on the phone regarding Sumrall returning to the Thunderhorse. Sykes then emailed Laurie Hayward, an HR employee, the following:

> I just got off of the phone with Brandon Sumrall, a Roustabout that used to be assigned to [Thunderhorse] before he was depolyed [sic] to Iraq with the Army a year ago. He just got back to the states yesterday, and is looking to possibly be ready to come back to work the first of June. Do you think he could possibly fill one of these openings? He should be giving you and/or Faunn a call sometime today.

May 2, 2012 Email Chain 2 (May 2, 2012 at 11:17 A.M.), ECF No. 32-10. Sykes then emailed Sumrall contact information for several HR employees, including Laurie Hayward, and stated, "As discussed on the phone, I think it would be best if you contacted Laurie Hayward first and then Faunn Davis." Email from Derek Sykes to Brandon Sumrall 2 (May 2, 2012 at 11:38 A.M.), ECF No, 32-12.

That afternoon Hayward replied to Sykes's email, "Per Shawn Smith, [Sumrall] can return to the TH. Do you want to plug him into Crew D arriving on 25 May? Are you going to contact him? Do you have his info?" May 2, 2012 Email Chain 1 (May 2, 2012 at 4:18 P.M.), ECF No. 32-10. Shortly after, Sykes forwarded Hayward's response to Sumrall. Sykes wrote:

---

[2] It is undisputed that Ensco and Pride had different pay policies for employees on military leave. The details of such pay dispute are not relevant to Plaintiff's claims under USERRA and Plaintiff has not pointed the Court to any other viable causes of action.

2

"Brandon, Please see the below email…this will put you on D Crew with David Pineda. Just stay in contact with Laurie Hayward and my relief – Stephen Richardson as to when you will be ready to return to the rig." May 2, 2012 Email Chain 1, (May 2, 2012 at 4:39 P.M.) ECF No. 32-10.

On June 9, 2012, Richardson, the other rig clerk, emailed Hayward again:

> I spoke with Brandon Sumrall today and he is needing a few classes before returning to work. . . . I do not have the email address for De'Janero Cooper[3] or I would send it myself. Also, Mr. Sumrall is going to be sending a drill schedule for upcoming drills. Mr. Sumrall is requesting a contact number for someone in the HR department. If you could please reply with a name and number so he might be able to get some questions answered by HR.

Email from Stephen Richardson to Laurie Hayward 1 (June 9, 2012), ECF No. 32-14. Two days later, Richardson sent Sumrall the contact information for Meghan Steed. Email from Richardson to Sumrall (June 11, 2012), ECF No. 32-15. Sumrall has alleged that he tried to call Ensco employees, but never received a response. Although Sumrall initially testified that he could not remember who he had called or when he made calls, he has recently submitted in an affidavit that he called Ensco personnel several times over the weekend of June 15-17, 2012, Father's Day Weekend and left messages that were not returned. Sumrall Aff. ¶ 16, ECF No. 34-1.[4]

Sumrall has submitted that since his calls were not returned, "I concluded the Ensco did not want me back." *Id.* ¶ 17. Sumrall reported Ensco's failure to reinstate him to the Employer Support of the Guard and Reserve (ESGR). *Id.* ¶ 18. Ombudsman Ronald Keller told Sumrall that he should drop the matter and that Ensco would terminate him if he filed a complaint. *Id.* At some point after, Sumrall got a job doing maintenance work on a farm. *Id.* ¶ 20.

On February 27, 2013, Ensco HR employees noticed that Sumrall was still listed in the system as on military leave. Feb. 27, 2013-Mar. 15, 2013 Email Chain 4, ECF No. 32-16. The

---

[3] It is unclear from the record as to what position Cooper held within Ensco.
[4] Such portions of the affidavit are the subject of Ensco's Motion to Strike [38], discussed below.

parties dispute whether Ensco attempted to contact Sumrall then. *Id.* (email from Jason Ortiz stating he called Sumrall twice without response); Sumrall Aff. ¶ 24 (Sumrall stating he never received a call from Ensco after June 2012). Jason Ortiz, an HR employee wrote that he spoke to Sumrall's mother that month. Feb. 27, 2013-Mar. 15, 2013 Email Chain 4. She informed him that Sumrall was no longer actively deployed and that he had tried to contact the rig to return but gave up after being unsuccessful. *Id.* Ensco then terminated Sumrall as an employee, effective March 3, 2013. *Id.* at 1.

In April 2017, Sumrall filed suit against Ensco alleging violations of the Uniform Services Employment and Reemployment Right Act (USERRA) for failing to promptly reinstate him, wrongful termination based on his membership in the Mississippi National Guard, and failure to give him a COBRA notice. Compl. ¶¶ 26-28, ECF No. 1. Both parties have filed motions for summary judgment and Ensco has also filed a motion to strike portions of Sumrall's Declaration.

## **II. MOTION TO STRIKE [38]**

Defendant has argued that two paragraphs of Plaintiff's affidavit should be struck as they conflict with Plaintiff's previous deposition testimony. The Sham Affidavit Rule states that "a plaintiff may not manufacture a genuine issue of material fact [in defending a motion for summary judgment] by submitting an affidavit that impeaches prior testimony without explanation." *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000); *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996); *Albertson v. T.J. Stevenson & Co.*, 749 F.2d 223, 228 (5th Cir. 1984). Nevertheless, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S. Erectors, Inc.*, 72 F.3d at 496. Furthermore, the Court "cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier

deposition." *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). In such cases, there is merely an issue of credibility, which must be resolved by the jury. *Id.* at 893, 894. In contrast, when an affidavit attempts to create a sham issue, to the point that the court may brand it as "bogus," the Court may disregard such sham affidavit. *Id.* at 894.

In its Motion to Strike, Ensco has objected to the following statements in Sumrall's affidavit:

> 15. . . . I called the home office multiple times but nobody responded to my voice messages
>
> 16. Over the Father's day weekend of June 15-17, 2012, I made repeated calls to Ensco personnel about returning to work. I left messages, but nobody ever called me back.

Sumrall Aff. ¶¶ 15-16, ECF No. 32-2. Defendant Ensco argues that this is plainly contradicted by Sumrall's deposition testimony. In his deposition, Sumrall testified that he did not keep notes of his phone calls to Ensco, Sumrall Dep. 54:25-55:2; 73:4-11, ECF No. 38-1, that he did not remember when he made his first or last phone call to Ensco or who he called, *id.* 55:19-56:3, and that he was unable to remember the numbers he called or what voicemails he left. *Id.* 72:18-22. After stating that he could not recall "right off the top of my head" whether he had any phone conversations with anyone from Ensco after June 11, 2012, Plaintiff testified that the last communication he had with Ensco was the June 11, 2012 email from Stephen Richardson giving him Meghan Steed's contact information. *Id.* 89:6-18. Sumrall testified that he did not remember if he called Steed, stating "I'm not going to lie and say I did and I didn't." *Id.* 101:20-102:8.

The Court finds that such statements are not sufficiently contradictory to warrant striking portions of the affidavit. Sumrall's testimony is, for the most part, that he did not remember the dates of any calls or who he called. Sumrall has submitted that he subsequently realized he made calls on Father's Day Weekend, and that he looked up the date. The Court, therefore, finds that

there is no "inherent inconsistency" between the affidavit and the deposition testimony. The fact that Sumrall could not initially remember making calls after the June 11 email is an issue of credibility that is best determined by a jury. Therefore, Ensco's Motion to Strike is **denied**.

Ensco has argued that if the Court declines to strike paragraphs 15 and 16 of Sumrall's affidavit, the Court should reopen discovery so that Ensco may question Sumrall about the creation of his affidavit and whether the changes came from him or his attorney. Ensco did not make this argument in its original motion; therefore, the Court need not consider it. *Vais Arms*, *Inc. v. Vai*, 383 F.3d 287, 292 (5th Cir. 2004) (quoting *S.W. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 545 (5th Cir. 2003)). Therefore, such request is **denied**.[5]

### III. MOTIONS FOR SUMMARY JUDGMENT

**A.     Claim under §§ 4311 of USERRA**

Sumrall's Complaint alleges that Ensco violated § 4311(a) of USERRA. An employer violates this section when, "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision. 38 U.S.C. § 4311(c). To recover, the plaintiff must show that the employer motivated by "antimilitary animus." *Staub v. Proctor Hosp.*, 562 U.S. 411, 422 (2011); *Bradberry v. Jefferson Cty., Tex.*, 732 F.3d 540, 551 (5th Cir. 2013). Ensco argues that Sumrall has produced no evidence of antimilitary animus. The Court agrees. Sumrall did not respond to any of Ensco's arguments regarding this claim.[6] As the party with the burden of proof, Sumrall is required to come

---

[5] Furthermore, the Court finds Ensco's cited case, *Walker v. George Koch Sons, Inc.*, 2:07-cv-274-KS-MTP, 2008 WL 4341379, at *3, (S.D. Miss. Sept. 18, 2008), to be distinguishable. In *Walker*, a deponent made *nine* substantive changes to his deposition testimony through the errata sheet. The Court found that the changes were permissible under Federal Rule of Civil Procedure 30(e), but that reopening the deposition was a permissible remedial measure under Rule 30. This case does not involve Rule 30, nor is it an extreme case like *Walker*.
[6] Rather, Sumrall only responded to arguments regarding the claim under §§ 4312 and 4313, which was not specifically alleged in his complaint. While Ensco urges the Court to ignore Plaintiff's arguments regarding this claim since it was not specifically alleged by statute number, the Court declines to do so, as it is clear from the complaint that Sumrall was making a claim for reinstatement.

6

forward with evidence to support his claims to defend against a motion for summary judgment. Because he did not do so, the Court will **grant** Ensco's Motion for Summary Judgment with respect to the claim under § 4311 of USERRA.

**B.      Claim under §§ 4312 and 4313 of USERRA**

Section 4312 "protects the employment of those returning to their former civilian jobs after temporary military duty." *Bradberry*, 732 F.3d at 545. Section 4313 provides that "a person entitled to reemployment under section 4312, upon completion of a period of service in the uniformed services, shall be promptly reemployed in a position of employment." 38 U.S.C. § 4313. USERRA's regulations provide that "'[p]rompt reemployment' means as soon as practicable under the circumstances of each case[, but a]bsent unusual circumstances reemployment must occur within two weeks of the employee's application for reemployment." 20 C.F.R. § 1002.181 (2017).

In order for a member of the military to have the right to re-employment when returning from service, he must show (1) he gave advance notice of his service to his employer, (2) his cumulative length of absences does not exceed five years, and (3) he submitted "an application for reemployment" to the employer within ninety (90) days after the completion of the period of service. 38 U.S.C. § 4312(a), (e)(1)(D). It is undisputed that the first two requirements have been met. Ensco only argues that Sumrall cannot show that he met the requirement of "application" for reemployment.

The parties have not cited any Fifth Circuit case law describing what constitutes an "application" for re-employment. The Court, upon its own search, has not found any either. Ensco has cited cases from the Sixth, Seventh, and Eighth Circuits, which hold that a court must make "a case-by-case determination focusing on the intent and reasonable expectations of both the former employee and employer, in light of all the circumstances." *Shadle v. Superwood Corp.*, 858 F.2d

7

437, 439 (8th Cir. 1988) (citing *Baron v. United States Steel Corp.*, 649 F. Supp. 537, 541 (N.D. Ind. 1986)). The applicable regulations state: "An application for reemployment need not follow any particular format. The employee may apply orally or in writing. The application should indicate that the employee is a former employee returning from service in the uniformed services and that he or she seeks reemployment with the pre-service employer." 20 C.F.R. § 1002.118 (2017). The regulations further provide: "The application must be submitted to the pre-service employer or to an agent or representative of the employer who has *apparent responsibility*[7] for receiving employment applications. Depending on the circumstances, such a person could be a personnel or human resources officer, or a first-line supervisor." *Id.* § 1002.119 (emphasis added). While a formal, written application is not always required, a "mere inquiry" is not sufficient. *Id.*; *Lacek v. Peoples Laundry Co.*, 94 F. Supp 399 (D. Pa. 1950) (visiting supervisor and inquiring as to conditions in plant not sufficient).

As recognized by the Second Circuit, "[o]nly two cases have held that an employee's demand for reinstatement after a period of military service was too ambiguous to meet the requirements of USERRA." *Serricchio v. Wachovia Sec., LLC*, 658 F.3d 169, 181 (2d Cir. 2011). The Second Circuit Court of Appeals continued:

> The first, *Baron v. United States Steel Corp.*, 649 F. Supp. 537 (N.D. Ind. 1986), involved a plaintiff who visited his former employer and notified it that 'he was going to try to go to college and that if he did not succeed in getting admitted to college, he would come back to USX and request work.' The district court held that this was not an unconditional demand for reemployment, and therefore, was not effective to trigger the plaintiff's right to reemployment. Then in *McGuire v. United Parcel Service*, 152 F.3d 673 (7th Cir. 1998), the Seventh Circuit upheld a grant of summary judgment to a defendant employer under USERRA when the employee had only casually inquired about the procedures for obtaining reemployment, and

---

[7] Several of the cases Ensco relies on require that the application be made to someone with *actual authority* to hire the returning veteran. *Hayse v. Tenn. Dep't of Conservation*, 750 F. Supp. 298 (E.D. Tenn. 1989) ("The [employer] has a right to expect that notice be received by someone who is in fact in a decisions-making position, *i.e.*, someone who is able to hire the returning veteran."); *see McGuire*, 152, F.3d at 677 (adopting the reasoning in *Hayse*). The above cited regulations were put into place after these cases; thus, the Court finds them to be controlling.

8

when the employer responded, directing him to contact the HR supervisor, he filed suit instead of acting as instructed. The court held that the plaintiff's casual inquiry into the *procedures* for obtaining his job was not 'an application for reemployment' as required by USERRA.

*Id.*

Ensco relies heavily on the McGuire case. In *McGuire*, the returning veteran only contacted his supervisor regarding the procedures for reemployment. *Id.* at 675. The supervisor stated, "The law specifies there are no requirements for reemployment. Please touch bases w/ Ed LeBel (HR) upon your return. Look to see you." *Id.* The employee never contacted LeBel. *Id.* Instead, he took the letter to mean that UPS was not required to reemploy him. *Id.* After he and the supervisor left phone messages for each other, McGuire filed suit. *Id.* The Seventh Circuit found that UPS would not reasonably expect to receive notice of an application from such employees when it had a personnel department. *Id.* at 677. It stated,

> Large employers like UPS cannot be expected to train all of their supervisors in the intricacies of employment law—that is why they create personnel departments. We can expect UPS to train its supervisors to refer personnel matter to those who are trained to handle them properly. This is precisely what happened here.

*Id.*

All of Sumrall's relevant contact with Ensco was through two rig clerks, Derek Sykes and Stephen Richardson. As noted, in May 2012, Sumrall spoke on the phone with Sykes about coming back to work on the Thunderhorse. Sykes emailed Hayward in HR, asking if Sumrall could fill a job opening. Sykes then emailed Sumrall contact information for several HR employees, stating that some of the phone numbers may be incorrect so email would be the best form of contact. That afternoon, Hayward emailed Sykes stating that Sumrall was approved to return to work at the end of May. Sykes forwarded that email to Sumrall and told him to stay in touch with Hayward and the other rig clerk, Stephen Richardson.

On June 9, 2012, Richardson, the other rig clerk, emailed Hayward again, stating that Sumrall needed a few classes before he could return to work. He asked Hayward to send a contact number for someone in HR, so that Sumrall could have some questions answered. Two days later, Richardson sent Sumrall the contact information for Meghan Steed. Email from Richardson to Sumrall (June 11, 2012), ECF No. 32-15. Sumrall has alleged that he tried to call Ensco employees, but never received a response.

Ensco argues that Sumrall's only contact was with the rig clerks, and that such communications do not constitute an application for reemployment because they were insufficient to give notice to Ensco. Ensco submits that since it is such a large organization, notice to those employees should not constitute notice to the entire company. Ensco further argues that "even if such actions could be deemed to have initiated the process, Sumrall's failure to contact HR representative Meghan Steed and/or otherwise complete the required training should preclude a finding that Sumrall made an 'application' for re-employment." Ensco's Mem. Brief Supp. Mot. Summ. J. 18, ECF No. 33.

In response, Plaintiff simply points out that after Sumrall asked if he could return to work, Ensco initially gave him a start date of May 25, 2012. Email # 14 from Derek Sykes to Brandon Sumrall (May 2, 2012), ECF No. 34-2. Plaintiff continues: "If Sumrall's request to return to work was not a sufficient 'application,' then Ensco would have never given him a date to return to work." Pl.'s Reply Supp. Mot. Summ. J. 1, ECF No. 45.

In ruling on Ensco's Motion for Summary Judgment, the Court must construe the evidence in favor of the non-movant, Sumrall. The Court finds that there is an issue of fact as to whether Ensco received notice of Sumrall's demand for reemployment. The undisputed evidence shows that Sumrall had informed two rig clerks that he wanted to be reemployed. Ensco had previously

10

told Sumrall that rig clerks handled some HR issues, including questions about pay. Email # 9 from James Phillips to Brandon Sumrall (Apr. 1, 2012), ECF No. 34-2. Furthermore, it appears that Laurie Hayward and Shawn Smith in the HR department had notice of Sumrall's request, even though Sumrall did not contact them directly. In contrast to the supervisor in *McGuire*, the rig clerks did not appear to entirely defer to HR personnel, and Sumrall did more than simply request information about the procedures for reemployment. Therefore, Ensco's Motion for Summary Judgment is **denied** with respect to the claim under §§ 4312 and 4313.

In ruling on Plaintiff's Motion for Summary Judgment, the Court must again construe the evidence in favor of the non-movant, Ensco. While the evidence Plaintiff has submitted is enough to defeat Ensco's Motion for Summary Judgment, construing it in the light most favorable to Ensco, the Court finds that there are issues of fact as to whether Ensco did ignore Sumrall's attempts to contact the HR representatives he was directed to and whether Sumrall reasonably believed that his "application" was complete. Therefore, Plaintiff's Motion for Summary Judgment is also **denied**.

## C. Liquidated Damages

Ensco has also moved for summary judgment as to Plaintiff's request for liquidated damages. A claimant may recover additional liquidated damages "equal to the amount of lost wages and benefits if the court determines that the employer's failure to comply with [USERRA] was willful[, meaning] the employer either knew or showed reckless disregard for whether its conduct was prohibited by [USERRA]." 20 C.F.R § 1002.312 (2017); 38 U.S.C. § 4323(d)(1)(C). Neither party has submitted Fifth Circuit case law on this point, and there is not much caselaw to be found in general, as the liquidated damages provision was not a part of the VRRA, USERRA's predecessor. *Fink v. City of New York*, 129 F. Supp. 2d 511, 523 (E.D.N.Y. 2001) (noting there was

"a dearth of caselaw" in any Circuit regarding the interpretation of § 4323(d)). Several courts, facing such, have taken the liquidated damages standard from the Age Discrimination and Employment Act. *Serricchio*, 658 F.3d at 193; *Montoya v. Orange Cty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 1022 (C.D. Ca. 2013); *Davis v. Crothall Servs. Grp., Inc.*, 961 F. Supp. 2d 716, 735-36 (W.D. Penn. 2013).

Based on such, courts have held "[i]t is not enough to show that the employer knew that the [law] was 'in the picture' or that the employer 'acted without a reasonable basis for believing that it was complying with the statute.'" *Skalka v. Fernald Envt'l Restoration Mgmt. Corp.*, 178 F.3d 414, 423 (6th Cir. 1999) (citing *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 132-34 (1988)). "If an employer acts 'reasonably and in good faith in attempting to determine whether [its] plan would violate' the law at issue, liquidated damages are not appropriate." *Koehler v. PepsiAmericas, Inc.,* 268 F. App'x 396 (6th Cir. 2008) (quoting *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129 (1985)). The burden is on the plaintiff to show willfulness. *Mace v. Willis*, 259 F. Supp. 3d 1007, 1016 (D. S.D. 2017) (citing *Davis*, 961 F. Supp. 2d at 736).

Ensco has argued that there is no evidence that it acted willfully. In response, Plaintiff has cited two cases, *Mace v. Ellis* and *Serricchio v. Wachovia Securities, LLC*. In *Mace v. Ellis*, the plaintiff Keishia Mace returned to her job after military training, only to be told that she had been replaced. 259 F. Supp. 3d 1007, 1012-13 (D. S.D. 2017). Mace immediately told her employer that its actions violated federal law. *Id.* at 1013. Her employer then attempted to telephone her, but she did not answer the phone as she wanted to speak with her attorney first. *Id.* at 1013-14. Three weeks after her request for reemployment, the employer wrote her a letter offering to place her back on the schedule, as another employee had quit. *Id.* at 1014. The district court held that the employer's actions were willful, as the employer "was on notice that she was asking not only for

reemployment, but that by denying her that reemployment, she believed defendants were in violation of the law." *Id.* at 1022. Although the employer did attempt to telephone Mace and she did not answer, the court noted that the employer could have left her a voice message offering to reemploy her or texted her that. *Id.* Further, the employer waited three weeks to write her a letter offering to reemploy her and only when another employee had quit. *Id.* Such constituted reckless disregard for her reemployment rights under USERRA.

In *Serricchio v. Wachovia*, Michael Serricchio returned from deployment and sent a letter requesting reinstatement. 658 F.3d 169, 177 (2d Cir. 2011). The employer did not respond for almost two months, and when it employed Serricchio about four months later, it was not on the same level as his previous employment. *Id.* Testimony of the manager in charge of military leave showing that she was aware the USERRA required "prompt" reinstatement, along with the fact that the employer did not respond to Serricchio for months, led the district court to conclude that there was evidence to support a jury's finding of willfulness. *Id.* at 191. The Second Circuit Court of Appeals, affirming, noted that the employer "offered no evidence to excuse its failure to 'promptly' reinstate Serricchio as required by USERRA." *Id.*

The Court finds both of these cases to be different from the one at hand. The undisputed evidence shows that Ensco gave Sumrall a tentative return date the day that he called Derek Sykes to discuss coming back on the Thunderhorse. Ensco gave Sumrall contact numbers and told him to email HR employees, as some of the numbers may not work. Instead, Sumrall's testimony is that he called several numbers, but that he never received a call back. There is no evidence that Ensco was aware or reckless to the possibility that it was violating Sumrall's rights under USERRA. Ensco's failure to reemploy Sumrall appears to be negligence, not recklessness.

13

Therefore, Ensco's motion is **granted** to the extent is asks the Court to dismiss the claim for liquidated damages.

**D.    Laches**

While USERRA has no statute of limitations, courts have permitted the affirmative defense of laches to prevent injustice. To invoke the equitable doctrine of laches, Ensco "must show an inexcusable delay in asserting a right and undue prejudice to [Ensco] as a result of that delay." *Rogers v. City of San Antonio*, 392 F.3d 758, 773 (5th Cir. 2004). Ensco argues that it is entitled to summary judgment based on this affirmative defense.

   1.    <u>Inexcusable Delay</u>

Ensco submits that it is undisputed that the last communication between Ensco and Sumrall was in June 2012 and that the first notice Ensco received of Sumrall's claim was on April 3, 2017, when Sumrall filed his Complaint. Email from Richardson to Sumrall 1 (June 11, 2012), ECF No. 32-15; Sullivan Aff. ¶ 12, ECF No. 32-2. Ensco also points out that while Sumrall did communicate with an Ombudsman, Roland Keller in June and July 2012, Sumrall did not express his complaints to Ensco, and Keller did not contact Ensco either. Further, there is no evidence that Ombudsman Keller and Sumrall corresponded after July 23, 2012. Therefore, it is undisputed that Plaintiff waited almost five (5) years before giving Ensco any indication that he was going to assert his rights under USERRA.

In response, Sumrall does not dispute any of the above. Rather, he submits that "Keller was not helpful and encouraged Sumrall him [sic] to drop the matter and move on."[8] Pl.'s Resp. Mot. Summ. J. 1, ECF No. 43 (citing Sumrall Aff. ¶ 18, ECF No. 34-1). Sumrall also submits that he

---

[8] Sumrall has also submitted that Keller told him that if he filed a complaint, Ensco would fire Sumrall. Fear of retaliation has been held to be an excuse for delay in asserting a right. Nevertheless, Sumrall found a new job in July 2012; therefore, Sumrall could not reasonably fear retaliation. Thus, the Court finds such allegation to be immaterial to its analysis.

14

contacted an attorney in October 2012, but that the attorney "told Sumrall that he was not aware of any legal remedy." *Id.* (citing Sumrall Aff. ¶ 21). Sumrall gives no reason for any further delay. Such does not constitute excusable delay. Therefore, the Court finds that Ensco has shown that there are no disputed facts with regard to Plaintiff's delay in asserting his rights against Ensco and that such delay was inexcusable.

    2.    Undue Prejudice

Nevertheless, passage of time alone is not sufficient. To prove the equitable defense of laches, Ensco must also show that it will suffer undue prejudice as a result of Plaintiff's delay. This has been described as a "sliding scale" where "the longer the plaintiff delays in filing her claim, the less prejudice the defendant must show in order to defend on laches." *Smith*, 338 F.3d at 734. Prejudice must be "material, meaning it affects the substantial rights of the defendant to such a degree that it justifies the equitable relief of barring the plaintiff's claims." *Id.* (citing *Jeffries v. Chicago Transit Auth.*, 770 F.2d 676, 680 (7th Cir. 1985)). Such showing of prejudice must be supported by "summary judgment evidence." *Rogers*, 392 F.3d at 773. The Fifth Circuit has previously noted that conclusory allegations of prejudice are not sufficient in a USERRA case. *Id.*

As one court has noted "[c]lassic elements of undue prejudice include unavailability of witnesses, changed personnel, and the loss of pertinent records." *EEOC v. Propak*, 884 F. Supp. 2d 433, 443 (W.D.N.C. 2012). In *Smith v. Caterpillar, Inc.*, the Seventh Circuit noted that undue prejudice may be found when witnesses' memories have faded over the years, there is a loss of relevant employment documents regarding plaintiff, and the employer is exposed to significant liability for back pay. 338 F.3d at 733. The Fifth Circuit has required a showing of actual unavailability for witnesses, not a substantial hardship in locating witnesses as the Seventh Circuit has held. *Compare Fowler v. Blue Bell, Inc.*, 596 F.2d 1276, 1279 (5th Cir. 1979) ("The mere

assertion that these persons are not presently with the company is insufficient to support a finding of prejudice. [The Defendant] must also show that they are unavailable to testify.") *with Smith*, 338 F.3d at 734 ("[T]he law does not require [the Defendant] to prove the absolute unavailability of key witnesses as a prerequisite for laches.").

In support of its defense, Ensco has submitted an affidavit of Sean Sullivan. Sullivan is an Ensco employee in the Human Resources department. Sullivan Aff. ¶ 2, ECF No. 32-2. According to Sullivan, almost all of the relevant emails were deleted under Ensco's document retention policy.[9] Sullivan also stated that several current employees, including James Phillips,[10] were questioned about their memory regarding Sumrall, and none had any independent recollection of the events. *Id.* ¶ 5. Former employees—including Meghan Steed and Laurie Hayward—were contacted, but none had any independent recollection of the issues at hand. *Id.* ¶ 6. Finally, Ensco attempted to contact seventeen (17) former employees, including Derek Sykes, Tommy Ellis, Shawn Smith, and Stephen Richardson, using their last known contact information, but Ensco was unable to reach them. *Id.* ¶ 7.

Sumrall has argued that this is not sufficient. He points out that in *Smith*, the defendant produced affidavits of the relevant witnesses, in which the witnesses stated that they had no memory of the events at issue in the case. *Smith*, 338 F.3d at 734-35. Sumrall also points out that in *Maher v. City of Chicago*, the defendant showed that only one of the two employees who hired plaintiff was deposed, and that that witness testified that the plaintiff's hiring was "all kind of cloudy" to him. 547 F.3d 817, 823 (7th Cir. 2008). Sumrall cites no cases which state that this

---

[9] Ensco was able to find two emails regarding Plaintiff. Sullivan Aff. ¶ 4 (incorrectly numbered as ¶ 2). Ensco's document retention policy provides that all emails are permanently delated after six months, email accounts are deleted when an employee's employment is terminated, and laptops are wiped when an employee leaves. Only emails that are saved in a certain type of file are retrievable. *Id.* ¶ 3.

[10] Phillips was the rig training supervisor who told Sumrall that rig clerks could handle pay issues.

level of proof is required. Rather, the Fifth Circuit has simply held that "summary judgment level evidence" is necessary. *Rogers*, 392 F.3d at 773.

Plaintiff also argues that parts of Sullivan's affidavit are hearsay. Ensco did not respond to this argument on its merits.[11] Rather, Ensco simply states that that Sullivan's affidavit is proper because it is based on his personal knowledge. Obviously, a statement may be based on personal knowledge and still be inadmissible hearsay. After reviewing the affidavit, it appears that several statements are hearsay. For example, the paragraphs stating that each of the current and former employees contacted had no independent recollection of the events described in the Complaint are out of court statements being used to prove the truth of the matter asserted. Furthermore, the Court agrees that Ensco's laches defense would be stronger upon a showing of what efforts it made to refresh the recollection of these witnesses. Nevertheless, not all of the affidavit is hearsay. The statements regarding Ensco's document retention policy, Ensco's inability to access emails from that time period, and the statements regarding Ensco's unsuccessful attempts to contact former employees are not hearsay. These are proper, admissible evidence at the summary judgment stage.

Based on the admissible evidence, the Court finds that Ensco has raised a genuine issue of fact as to whether it has been subjected to undue prejudice as a result of Plaintiff's delay in bringing his claim. The Fifth Circuit has previously noted that factual questions of prejudice in a laches defense "cannot be disposed of by summary judgment. A trial on the prejudice issue is required '(to enable) the court on the basis of the whole record to determine the underlying rightness of it.'"

---

[11] Ensco simply argued that "[i]f Sumrall truly believes that Sullivan's affidavit is incompetent summary judgment evidence, the rules provide that he should file a motion to strike the affidavit or portions thereof that he alleges are impermissible." Def. Ensco Offshore Co.'s Rebuttal Supp. Mot. Summ. J. 6, ECF No. 44. The Court directs Ensco to the Advisory Committee Notes to the 2010 amendment of Federal Rule of Civil Procedure 56:
> Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. . . . *There is no need to make a separate motion to strike.*

Fed. R. Civ. P. 56 advisory committee's note to 2010 amendment (emphasis added).

*Akers v. State Marine Lines, Inc.*, 344 F.2d 217, 221 (5th Cir. 1965) (alteration in original) (quoting *Vega v. The Malula*, 291 F.2d 415 (5th Cir. 1961)). Such issues are better submitted to a jury. Therefore, Ensco's motion is **denied** to the extent it requests that the Court dismiss Plaintiff's claim based on the affirmative defense of laches.

### IV. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that that Motion to Strike Plaintiff's Affidavit is **denied**. Plaintiff's Motion for Partial Summary Judgment on his reinstatement claim is not well taken and is **denied**. Ensco's Motion for Summary Judgment is **granted** as to the claim under § 4311 of USERRA and the claim for liquidated damages. Otherwise, it is **denied**.

SO ORDERED AND ADJUDGED, on this, the ___ day of May, 2018.

KEITH STARRETT
UNITED STATES DISTRICT JUDGE